The first case on today's docket is the case of Fairfield National Bank v. Abigail Chansler I'm going to say it all, and we have Mr. James Van Winkle for the appellant and Ashley Bryan, Abby, I'm sorry, Bryan for the appellant. You may proceed, Mr. Van Winkle, we are prepared to do so. May it please the court, opposing counsel, James L. Van Winkle on behalf of the appellants, Belinda Munsell individually and as executor of the estate of her mother, Malinda Munsell. This case involves the ownership of the funds derived from two particular certificates of deposit. The deposits were originally issued by Fairfield National Bank. Malinda Munsell was the owner of those two accounts. She made her granddaughters, Abigail and Cordelia, payable on death, one for each particular certificate of deposit. Prior to her death, she contacted the bank, she telephoned them, told the bank she wanted to change those particular certificates of deposit to make her daughter, Malinda, the POD beneficiary. The bank prepared the necessary paperwork and mailed it to Malinda, and she didn't receive it. She telephoned them a second time, they sent a second set of paperwork. In the interim, the first set of papers arrived, she executed those documents that the bank sent her, and then on a Saturday, her brother mailed the signed documents back to Fairfield National Bank. Sometime on the following Sunday, just 24 hours later, Mrs. Munsell became very sick, she passed away. The bank received the documents on a Tuesday, processed the documents without knowledge of her death. Shortly thereafter, Malinda Munsell's ex-husband, who was an attorney, contacted the bank and said, my daughters are the owners of those funds, prompting an interpreter action by Fairfield National Bank. The ruling from the trial court was that the change of beneficiary had to be, quote, accepted by Fairfield National Bank and by implication accepted by them prior to the death of Mrs. Munsell in order for the change to be effective. We believe that the trial court's ruling as a matter of law was in error because it ignored several salient points. First, if the court examines the applicable statute, there is nothing in the statute that describes what is necessary to effect the revocation of the payable loan death account. So the statute itself is silent. The statute uses the phrase, you may change the designated beneficiary, which almost implies that you can add a second beneficiary by an instrument accepted by the bank. But if the court looks at the Widening case, and this has been the rule even since Totten Trusts were recognized by the Illinois courts, there is no particular form of an instrument required to create a Totten Trust or to create a POD account. It doesn't take a signature card. It just takes some particular written instrument which evidences an intent to create a POD beneficiary. You know, the converse of that is, is if it only takes a written instrument to create it, it only takes a written instrument evidencing an intent to revoke the POD status. To do otherwise destroys the essential nature of a POD account. A POD account is one where the initial account holder has absolute control over that account during their lifetime. They can do with it as they please, when they please, and how they please. And as long as they have executed an instrument to revoke the POD status prior to their death, and it clearly evidences that intent, that's sufficient to revoke the prior POD designation. In this particular case, there were instruments signed by Mrs. Munsell that not only revoked and withdrew the money from the prior PODs and authorized transfer to new CDs, but also she signed the signature cards for the new certificates of deposit. The statute says, on the death of the last surviving person designated as holder, and the statute indicates, of course, that it has to be, and the change has to be with documentation that the bank will accept. They've got regulators looking over their shoulder all the time. And they've established these procedures. There's no dispute as to issues of fact in this case. Everyone agrees as to the timeline of what happened when. How do you deal with the uncontested fact that at the actual time of death that these were the payable on death beneficiaries? Well, first I disagree that at the time of death these were the payable on death beneficiaries because prior to her death Melinda had executed a document that revoked those prior designations. And I think that needs to be the rule of law that those revocations can be effected. There is nothing in the statute that says that the revocation has to be accepted by the bank prior to death. Second off, if the court looks at the language, it says the holder during his or her lifetime may change any of the designated beneficiaries. Well, she changed them during her lifetime. And then the statute goes on to say by an instrument accepted by the institution. But there's no timeline stated in the statute. It doesn't say it has to be accepted by the institution prior to death. What is acceptance? Does acceptance mean it has to be on a form that the bank approves? Does acceptance mean that they have to approve the signature? Or does that imply somehow that the bank has a power to say no, we're not going to let you do that? I mean accepted is kind of a vague term as used in this particular statute. And I think as a policy matter if you look at the purpose of a POD and you look at the law that says that the holder of that account can do whatever they want to, you have to give them the ability to revoke during their lifetime. And as long as it's been revoked, even though the bank's records may have initially as of that time on a Sunday when Mrs. Munsell died, even though the bank's records may have reflected that, she had already revoked it. And, you know, the bank's not even open on Sunday. So how is that? Are we giving the same in the statute that, well, you can't revoke it on Saturday and Sunday because the bank's not open? You can't revoke it on a banking holiday or a national holiday? And I think that takes away from the account holder certain incidents of ownership that they have that's been recognized by the Illinois courts. And it also creates an incongruity in subsection B that talks about the holder of the account can withdraw at any time. Well, if you've got a POD checking account and they bring the check to somebody before they die and hand it to them on a Friday, and it goes through the banking system and they die Sunday night, they die Monday morning before the banks open up, or they die on Tuesday or Monday and the check clears the bank on Tuesday, is the rule that, well, you can't withdraw it? I mean, I think it creates an incongruity in the sense that if there has been an instrument signed to withdraw or revoke, it needs to be honored irrespective of the date of death. And it also avoids the timing problem. I mean, you've got that. If the bank has to have processed it or whatever prior to the death, I mean, if it's in the bank's mailbox, is that not effective? There was no expectation here that the bank wouldn't accept it. I mean, they prepared all the paperwork. They sent it to her. As long as she signed everything, as indicated, it was going to be accepted. That's correct, Your Honor. You know, and just let me ask you a question here about Section 4. I mean, we kind of key on A, but the opening paragraph of Section 4 of the statute for people starting such an account, it says if one or more persons opening or holding an account sign an agreement with the institution providing so-and-so, it's a pay on death account. So there it would seem like at least if you're establishing an account, there's nothing about accepting it. If you sign an agreement, you're done. Yes. So would we be in a different situation if this was an initial attempt to turn an account into a pay on death account, and there's nothing about it? I don't think so, because if you go back and you look at the, like, the old Pergula case, it talks about taught and trust, and even Restatement II says there's no particular form required to create one of these payable on death or beneficiary accounts. I think the flip side could be if prior to somebody's death they execute a document and mail it to the bank and says, you know, I designate so-and-so as payable on death, that creates that account even before the bank receives the document. There's really nothing to interpret on that part. It just says sign an agreement. Yes. You know, so, okay. And I think that as a policy matter, the court needs to recognize that. I also pointed out that under the Uniform Commercial Code, banks can accept instruments for up to ten days after somebody has passed away, if they do so without the knowledge that that person has died. And if you dovetail that back into Section B, clearly the bank can accept and process a check that withdraws money out of a POD account. And I think the same rule should apply to certificates of deposit. In addition, because of the revocation, and I think that clearly shows that there was a revocation prior to death which would make the money payable to the estate, I also believe that Mrs. Munsell properly created the new beneficiary in favor of her daughter, Melinda Munsell, because the bank prepared the documents. The bank said, this is what you need to sign. She signed them and mailed them back. The bank delivered the documents to her. She mailed via mail, and she mailed those back. And if we apply the mailbox rule, you know, the act is completed when those documents were deposited in the United States Mail. And acceptance, as used in the statute, I believe is a vague term. And as long as the bank says these are the documents necessary, if you will sign on these specific places, we will process that. I believe the bank had pre-accepted those documents and had already said, we'll accept this, sign here and sign here, and that's exactly what she did. She mailed them back. And so she properly changed the POD status on those CDs. There was no act that was required of her left after she mailed it. Everything that she could have done was done, right? That is correct, Your Honor. The only thing that had to be done was, in the practical world of the banking industry, somebody had to take those, enter them into the computer, and, you know, change the account numbers and issue out the new accounts. Well, you can imagine, what if she died right before somebody hit that last keystroke to process it? Are we saying, well, that's not effective? I don't think that should be the rule. I think that's unduly splitting hairs. And in this case, in fact, the bank did accept all the instruments. The bank accepted it and processed it, and then it was only after they had been processed did they find out she had died. And the technical argument from the police standpoint is, well, as of the day of death, the bank hadn't actually changed it on their records. But I don't think that's what the statute says. I don't think that's an incident or a hallmark of a payable on death account. I think if we impose that kind of rule, it limits, in effect, the incidence of ownership of a POD account in a way that the legislature never intended. Any further questions from the court? I think so. Thank you, Mr. Chairman. I thank the court. You'll have the opportunity for rebuttals. Ms. Bryan. May it please the court. Counsel, Your Honors. My name is Abby Bryan, and I represent the Appleys, Abigail Chancellor, and Cordelia Chancellor. Your Honor, our position is the facts of this case are simple and they're uncontested. On the day of Melinda Munsell's death, she was the owner of two certificates of deposit with the payable on death beneficiaries designated Abigail Chancellor and Cordelia Chancellor. I believe the circuit court was correct in granting them summary judgment and finding that they were entitled to judgment as a matter of law. Summary judgment is appropriate when there's no genuine issue of material facts and moving the party is entitled to judgment as a matter of law. Here there is no issue of fact. Everybody is in agreement. And on the date of her death, Abigail and Cordelia were the designated beneficiaries. According to the Illinois Trust and Payable on Death Accounts Act, the statute clearly states upon the death of the last surviving account holder designated beneficiaries at that time as the beneficiary of the account. It also specifically states in there how they're to distribute those funds. Two things. If you could speak just a little bit louder, I apologize. And the second thing is let me ask you the same question I asked your opposing counsel. On the date of death of the last surviving person designated as holder, there's no question the bank had not processed the forms that they prescribed and that they would accept. They had not processed it at the time of the date of death. Is there anything that the last surviving holder had to do that had not been done at the time of her death? No, Your Honor, I don't believe there's anything she had not done. I understand the statute and some inherent ambiguity in it. How do you deal with the lines of cases that uniformly say, this is something that's in the unfettered discretion of the holder of the instrument? It's their intent that can rule up to the time of their death. You've got a situation where the holder exercised her discretion and her will to, I won't use that term, that's going to complicate it, but her intent to change the beneficiaries and executed everything she had to do and mailed it before the time that she passed away. Why under the line of cases shouldn't her intent, as evidenced on forms that the bank said, we will accept these? Why shouldn't that control rather than the designees of who should get this money at time of death and had not been processed yet but was imminently going to be changed? Your Honor, Rhonda White, the Fairfield National Bank employee who testified in her deposition, she sent the documents to Melinda Muscle. She also sent with those documents a cover letter. And in that cover letter, it was stated that the change in beneficiary would not take effect or become effective until the bank actually received the paperwork and made the changes. So Melinda Muscle was made aware of that during her lifetime as she was filling out those paperwork. It was the bank's policy. They cannot make the change, the change cannot be effective until they actually receive the documents. Is that cover letter in the record? No, Your Honor. They no longer have that letter, but it was testified to by Rhonda White in her deposition. But the bank doesn't determine the law or doesn't make the law or interpret the law. They can interpret the law, but they're not obviously the final word. It seems to me that if the revocation or designation is contingent on bank processing, it could have just very precious and arbitrary results. Somebody could be on vacation and could sit on their desk for a week. It could get lost, as it did apparently here, and they had to be sent again. It would have very, very results in almost every case. Your Honor, I think that's why the statute exists as a bank protection statute, because you clearly give the bank instructions on what to do in these types of situations. And I think we can't ignore the fact that a payable-on-debt account is payable on debt. It's triggered by the debt of the account holder. So at her debt, it was triggered, and Abigail and Cordelia Chanson were the designated beneficiaries at that time. We could also hypothesize that maybe she filled out all this paperwork and it got lost in the mail for months, and the bank didn't receive it until months after her death. At that point in time, would it be proper to change it then, nine months later? I don't believe so, Your Honor. Because the bank did receive the document. Yes, they did, after her death. I don't believe it. Any intent that she may have had to change her beneficiary, any intent that she had died with her when she died. So is there any dispute about her intent, though? I mean, you don't dispute that it was her intent to make the change. I think that's a different argument that we didn't go into at the trial court. We had a summary judgment motion based on the facts. I think we could dispute her intent. I think she was elderly. Her daughter was in town from Texas the week before she died. It was clear that her daughter was communicating with phone calls with the bank. So there may be some other issues out there. There may be some issues with her actual intent, whether she was forced to work harder since making these changes. But those aren't issues before the court today. We've made, in our trial court, we've made an argument based on the statute in effect, payable on death beneficiaries. I think that they were the payable on death beneficiaries at the time of her death, and the statute controls that they're entitled to the funds and the CDs. So put a different way, I guess really we should assume for purposes of interpretation of the statute that it was her intent to change. I mean, there may be issues of undue influence out there or something that maybe are going to come up later, but for purposes of this appeal. Yes. Okay. But, you know, I think as the statute says, they can't accept documents that they have not yet received. And we'd have no way of knowing until they've accepted those documents, received those documents, and processed those documents, whether or not they were correctly filled out. Had there been an error or something in that, or maybe she made a mistake, you know. But then it wouldn't be accepted. But this was accepted. Because at the time of making the changes, the bank was not aware of her death. Had they had the knowledge at that point in time before making the changes that Melinda Munsell had in fact died, it would not have made the changes, Your Honor. Is there testimony to that? No, there's no testimony to that. What is there in the record that tells us that they would not have accepted it if they had known she was dead? I don't think there's anything in the record that would speak to that. Okay. But, you know, had they been aware of that fact, I don't believe that they would have necessarily just gone ahead and made the changes without further looking into the matter and how they came to the situation. I think at the time when they did make the change, they weren't aware of all the facts of the situation. Is there any legislative history on this statute that you know of? Not that I know of, Your Honor. I looked, and I think this was a very difficult issue because I didn't find that there really was any case law on point or anything that spoke to this specific issue in dealing with the payable undead beneficiary. So I think the most important fact that can't be ignored is that clearly they were designated beneficiaries at the time of death. That's when the payable undead beneficiary was triggered. Summary judgment was appropriate in their favor and should be upheld by the state. Have you found any authority? I've read what both of you have written. You both did an excellent job, by the way. Is there anything that basically indicates whether the terms in the statute by written instrument accepted by the institution means it has to be physically accepted and processed or it has to be on a type of instrument that the bank has indicated to its customers that it will accept? You know, you can't write it on a scrap of notepaper. This is the instrument you fill out and sign. Is there anything on that at all? Not that I'm aware of, Your Honor. I suppose if it's an instrument that the bank will accept, they will accept that instrument for whatever it may be. Submit it. Yes. Thank you. Thank you, Mr. Brown. Thank you. Do you have any rebuttals? Just briefly, Your Honor. I'm not aware of any legislative history to answer the Court's questions. Thank you. But to quote the Tragic Court, 198 North and 2nd, 205, the tentative trust of a savings deposit can be revoked by the depositor at any time during his lifetime by a manifestation of his intention to revoke the trust. No particular formality are necessary to manifest such an intention. And even though that dealt with Totten Trust, POD accounts are a derivative of Totten Trust. And I think that the statute as drafted does not revoke the basic common law principle of these kinds of accounts that give to the account holder the ability to revoke at any time. And so for that reason, I believe the trial court wasn't there. Any further questions for the Court? I don't think so. Thank you, Your Honor. All right. Thank you, Your Honor. Thank you, Mr. Brown. Both for your briefs and your arguments, I don't think the matter is advised from the ruling to be enforced.